CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
October 16, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALUCIOUS WILLIAMS, JR., ) | |
|     Plaintiff, ) | Civil Action No. 7:22-cv-00670 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| ) | By: Joel C. Hoppe |
| OH, *et al.*, ) |     United States Magistrate Judge |
|     Defendants. ) | |

Alucious Williams, Jr., a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 that was severed into several actions, including this one, involving allegations related to an incident where plaintiff covered his cell door window. Compl., ECF No. 1; Mem. Op. & Order, ECF No. 1-1.  The parties consented to jurisdiction before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c)(1). ECF No. 15.

The six remaining defendants move for summary judgment. They assert that they did not assault plaintiff after he spit on a prison guard, plaintiff was not subjected to unconstitutional conditions of confinement, and he did not exhaust his administrative remedies. ECF No. 35. Williams has also filed a motion to enter evidence and a motion for an extension of time to file a response. ECF Nos. 62, 63. Finally, Williams has filed two motions for preliminary injunctive relief. ECF Nos. 66, 68. Defendants have filed responses to those motions.

Williams's motions to enter evidence and for an extension of time will be granted, but the defendants' motion for summary judgment will also be granted. Further, Williams' motions for injunctive relief will be denied, and this matter will be dismissed in its entirety.

I.  BACKGROUND

**A.  Procedural Background**

On January 29, 2024, the court issued an opinion and order granting the defendants' motion to dismiss, such that claims one, two, four, and five were dismissed. ECF Nos. 30, 31. The court also dismissed all claims against defendants in their official capacities and dismissed two of the defendants, Warden S. Fuller and Captain Gilbert. This left six defendants: correctional officers Oh, Clifton, Castle, and Philips, Sergeant Taylor, and Unit Manager Larry Collins, all of whom move for summary judgment.

On January 22, 2025, the court dismissed this action for want of prosecution because Williams failed to respond to the motion for summary judgment. ECF No. 56. However, several months later, plaintiff filed a motion to reopen, which the court granted and deemed plaintiff's response to the summary judgment motion to be timely filed. ECF No. 59.

**B. Plaintiff's Claims**

According to the complaint, on December 15, 2020, while he was being housed as an inmate at Red Onion State Prison, Williams covered his cell door window to protest being denied use of a phone to make a "legal call." Compl. ¶ 16. Officer Philips exchanged words with Williams, and Philips called Sgt. Taylor, along with Officers Oh, Clifton, and Castle to Williams's cell. *Id.* ¶¶ 18–19. Sgt. Taylor instructed Williams to cuff up so he could be moved from his cell (C-201) to a "strip cell," and Williams was placed in wrist and ankle restraints. *Id.* ¶¶ 20–21. Clifton said, "Don't come out the cell looking tough you little bitch," and Williams "attempted to spit on him." *Id.* ¶¶ 21–22. Williams alleges that Officers Oh, Philips, Clifton, and Castle, and Sgt. Taylor then punched him in the face. *Id.* ¶ 23.

As Williams lay on his stomach, he was "struck 7–8 more times, once in the eye with a canister of mace." *Id.* The officers sat on Williams' back "applying pressure to [his] chest area attempting to stop [him] from breathing." *Id.* ¶ 24. Unit Manager Collins was called to

Williams's cell and ordered that he be placed in a spit mask. *Id.* ¶ 26. Williams was then placed in four-point restraints, evaluated by a nurse, and placed in cell C-202. *Id.* ¶ 27. Later that day, Officer Oh allegedly taunted Williams and gave him empty food trays at lunch and dinner. *Id.* ¶¶ 28–31. Williams was left in the four-point restraints overnight. *Id.* ¶ 32.

Williams filed an informal complaint on December 15, 2020. *Id.* ¶ 34. Lt. Barton responded to the complaint by stating that no excessive force had been used. *Id.* Williams alleges that he submitted an Emergency Grievance on December 18, 2020, and he was seen by a nurse and given Tylenol. *Id.*

The following claims remain in this case:

- <u>Claim three:</u> Violation of the Eighth Amendment, against Oh, Philips, Castle, and Taylor, by "using illegal strikes with their hands and a weapon while Plaintiff Williams was in handcuffs and leg restraints and posed no physical threat." *Id.* ¶ 38.

- <u>Claim six:</u> Violation of the Eighth Amendment for "placing Plaintiff Williams in 4-point restraints for 21 hours with no mattress, suicide smock, suicide blanket, forcing him to endure the harsh weather conditions," against Collins and Taylor. *Id.* ¶ 41.

Williams' complaint seeks declaratory and injunctive relief and $50,000 in compensatory and punitive damages against each defendant jointly and severally. *Id.* ¶¶ 42–46.

**C. Facts in Support of Defendants' Motion**

In support of their motion for summary judgment, defendants filed the declaration of T. Still, the grievance coordinator responsible for maintaining grievance files at Red Onion. Still Decl. 1, ECF No. 36-2.[1]

Operating Procedure (OP) 866.1 is a mechanism for offenders to resolve complaints, appeal administrative decisions, and challenge the substance of procedures. The process

---

[1] Defendants also submitted a declaration by Sergeant Taylor which addresses the merits of Williams's claims. ECF No. 36-1. Because the court concludes that plaintiff did not exhaust his administrative remedies, it is not necessary to recount those facts in this opinion.

provides corrections administrators a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. Still Decl. ¶ 4.

All issues are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, issues related to institutional disciplinary hearings, State and Federal court decisions, laws, and regulations, and matters beyond the control of the VDOC. Each inmate is entitled to use the grievance procedure for problem resolution. Still Decl. ¶¶ 6, 8.

OP 866.1 provides that "[g]rievances are to be submitted within 30 calendar days from the date of occurrence/incident or discovery of the occurrence/incident." A Regular Grievance is an inmate's formal complaint concerning an issue that has affected the inmate personally. *Id.* ¶ 7.

Before submitting a Regular Grievance, the offender must demonstrate that he has made a good-faith effort to informally resolve his complaint by submitting an Informal Complaint or Written Complaint form at the relevant institution, and it is then forwarded to the appropriate person for a response. *Id.* ¶ 9.

Prison staff are allotted fifteen calendar days to respond to an inmate's Written Complaint to ensure that the informal response is provided before the expiration of the thirty-day period in which an offender may file his regular grievance. If the inmate is dissatisfied with the response to the Informal Complaint or if staff fail to provide a written response to the Informal Complaint within 15 days, he may submit a Regular Grievance on the issue. If he submits a Regular Grievance, he is required to attach documentation of his attempt to resolve the issue informally. Still Decl. ¶ 10.

If an inmate's Regular Grievance meets the Grievance Procedure's criteria for acceptance, it is logged and assigned a number. Those grievances that do not meet the filing requirements of OP 866.1 should be returned to the inmate within two working days from the

date of receipt noting the reason for return on the intake section of the grievance form. Still Decl. ¶ 11. If an inmate wants review of the intake decision on any grievance, he has five days to appeal the decision to the applicable Regional Ombudsman. There is no further review of the intake decision. *Id.* ¶ 12.

On December 21, 2020, the grievance department received an Informal Complaint from Williams, and it was assigned the number ROSP-2020-INF-02357. In his Informal Complaint, Williams stated: "On 12-15-2020 between 10:30-11:05 A.M. I was involved in an incident where the above-mentioned Officers slammed me to the floor while I was handcuffed and shackled and proceed to punch me in the face, head and body. C/O Oh hit me in the eye causing my eye to swell and excruciating pain. These officers used excessive force and violated ACA standards. Furthermore C/O Clifton excited the situation." On December 29, 2020, Lt. D. Barton responded to the Informal Complaint, stating that "[n]o excessive force was observed via video." Still Decl. ¶16 & its Encl. B.

Williams did not submit an Informal Complaint or Written Complaint complaining that UM Collins or Sgt. Taylor violated his constitutional rights by leaving him in ambulatory restraints for 21 hours with no mattress, suicide smock, or blanket. Still Decl. ¶17. Williams also did not submit any complaint within 30 days of December 16, 2020, to complain about the conditions of his confinement while he was in ambulatory restraints on December 15-16, 2020, or to complain about the length of the application of ambulatory restraints. Still Decl. ¶ 17. Williams did not pursue ROSP-2020-INF-02357 by filing a Regular Grievance that was accepted at intake. Still Decl. ¶ 18, Encl. A.

On April 9, 2021, the grievance department received an Informal Complaint from

Williams, and it was assigned the number ROSP-21-INF-00660. In his Informal Complaint, Williams stated: "I am filing this complaint due to the violations of my 1st, 6th, 8th, and 14th amendment rights. Since 6-8-19 Red Onion Staff has denied me of exhausting administrative remedies by intercepting, and circumventing my complaints at the grievance stage, obstructing criminal investigations by pulling other offenders out to pose as me to speak to ACLU of Virginia, Wise County Magistrate Office, U.S. Department of Justice, S.I.U., and Legal call/visits as well as aiding offenders to file lawsuits and taxes in my name." On April 24, 2021, Lt. D. Barton responded to the Informal Complaint, stating "[y]ou are being housed in a safe environment and your rights are not being violated." Still Decl. ¶ 19, Encl. C. Williams did not pursue ROSP-21-INF-00660 by filing a Regular Grievance that was accepted at intake. Still Decl. ¶ 20, Ex. A.

On June 23, 2021, the grievance department received an Informal Complaint from Williams, and it was assigned the number ROSP-21-INF-01142. In it, Williams stated: "On the following dates the above listed officers [Unit Manager Larry Collins, C/O Oh, C/O Clifton, C/O Castle, Sgt. Taylor, A/O Philips] attempted to kill me: 12-01-20, 12-15-20, and 12-29-21. Unit Manager Collins, Intel and Administration is aware of these incidents." On July 7, 2021, Chief of Housing and Programs D. Turner responded to the Informal Complaint, stating that "[a]ll incidents that happened on those dates have been investigated and reviewed and I can find no evidence to support your claims that anyone has attempted to kill you." Williams did not follow up this Informal Complaint by filing a Regular Grievance. Still Decl. ¶ 21, Encl. D.

None of Williams' complaints referring to the incident on December 15, 2020, was followed by a Regular Grievance or pursued through a Level II appeal. Still Decl. ¶ 23. Williams did not use VDOC's Grievance Procedure to pursue any complaint that UM Collins or Sgt.

6

Taylor wrongfully left him in ambulatory restraints for 21 hours with no mattress, suicide smock, or blanket on December 15–16, 2020. *Id.* ¶ 24.

### D. Plaintiff's Responses to the Summary Judgment Motion

As noted above, the court has deemed plaintiff's response at ECF No. 58 to be timely filed. Subsequently, plaintiff filed a motion to enter evidence, which includes an affidavit and several exhibits. ECF No. 62. Plaintiff also filed a motion for an extension of time, a supplemental pleading, and an affidavit. ECF Nos. 63, 64, 65.[2] Plaintiff's motions will be granted. The court has considered these filings in its consideration of the defendants' motion for summary judgment.

## II. ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show the absence of a material fact dispute, the

---

[2] In this affidavit, plaintiff explains that he was able to watch the video of the December 15, 2020 incident, and he describes what he saw when watching the video. ECF No. 65.

party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

**B. Exhaustion**

"The Prison Litigation Reform Act ('PLRA') requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions in federal court." *Woodhouse v. Duncan*, 741 F. App'x 177, 177 (4th Cir. 2018) (citing 42 U.S.C. § 1997e(a)(1)). This "requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and federal courts do not have discretion to waive it or to excuse a plaintiff's failure to exhaust administrative remedies that were otherwise available to him, *see Ross v. Blake*, 136 S. Ct. 1850, 1855–59 (2016). The PLRA also "'requires proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly,' to allow the agency a full and fair opportunity to address the issues on the merits." *Woodhouse*, 741 F. App'x at 178 (emphasis omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 217–18 (2007).

Lack of exhaustion is an affirmative defense that must be asserted by a defendant. Once the defendant has made a threshold showing of failure to exhaust, the burden shifts to the

8

plaintiff to show that such administrative remedies were unavailable. *Whitten v. Mays*, Civil Action No. 7:23-cv-00399, 2025 WL 320951, at *1 (W.D. Va. Jan. 28, 2025) (citing *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011)).

The exhaustion requirement "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1859 (brackets omitted). A remedy is "available" when it is "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 523 U.S. 731, 738 (2001)). Conversely, a remedy is not available when:

> (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Woodhouse*, 741 F. App'x at 178 (quoting *Ross*, 136 S. Ct. at 1859–60). These are the "three kinds of circumstances" where the Supreme Court has recognized that "an administrative remedy, although officially on the books, is not capable of use to obtain relief" in the prison context. *Ross*, 136 S. Ct. at 1859. "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." *Id.*

The record on this summary judgment motion is undisputed that Williams did not submit an Informal or Written Complaint that UM Collins or Sgt. Taylor violated his constitutional rights by leaving him in ambulatory restraints for 21 hours with no mattress, suicide smock, or blanket. Williams submitted a Written Complaint that officers slammed him to the floor and punched him on December 15, 2020, but he did not pursue this allegation by submitting a Regular Grievance that was accepted at intake. Thus, the record demonstrates that plaintiff did

9

not exhaust his administrative remedies. At this point, the burden shifts to Williams to demonstrate that administrative remedies were not available to him.

In response, plaintiff argues that he was "denied of grievances from 12/1/20-4/19/21," while housed in segregation, suggesting that the grievance process was unavailable to him. ECF No. 58-1 at 24; ECF No. 62-1. This vague, conclusory assertion is insufficient to establish that prison officials thwarted plaintiff's ability to submit grievance forms. *See, e.g.*, *Williams v. Gilbert*, Civil Action No. 7:22-cv-00668, 2024 WL 1261211, at *4 (W.D. Va. Mar. 25, 2024) (finding that "unsworn assertions and allegations" about being denied informal complaints and grievances "are insufficient to defeat summary judgment"). Moreover, it is belied by the record, which shows that Williams did submit an Informal Complaint on December 21, 2020, shortly after the December 15 incident described in his complaint. Plaintiff's grievance log, which he filed as an exhibit, also shows that he also filed Informal Complaints on February 22, 2021, and April 9, 2021. Pl.'s Mot. to Enter Evid., Ex. 16, ECF No. 62-2. Plaintiff asserts that he submitted a "handwritten level 1 grievance to the Warden's Office on January 2, 2021." ECF No. 58-1 at 19; ECF No. 62-1 at 12. The handwritten "Grievance," however, refers to incidents from "12/1/20–12/8/20" and does not mention the incident on December 15. Pl.'s Ex. 13, ECF No. 62-2 at 14. Thus, the handwritten note is not relevant.

Plaintiff's complaint, which is verified, does contain some allegations about exhaustion. *See id.* (stating that a verified complaint "can defeat a properly supported motion for summary judgment") (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)). He made similar allegations about exhaustion in one of his affidavits. *See* ECF No. 62-1. Plaintiff's complaint states that he submitted an emergency grievance on December 18, 2020, after which he was seen by a nurse and placed on a list to see the medical provider. Compl. ¶ 34. Further, plaintiff

submitted an Informal Complaint on December 18, 2020, and Lt. Barton responded that "no excessive force was used." *Id.* He also asked that the video footage be saved and to have pictures taken. *Id.* In the court's view, these allegations are insufficient to survive summary judgment. First, emergency grievances do not satisfy the exhaustion requirement. *See Crichlow v. Clarke*, Civil Action No. 4:23-cv-000006, 2023 WL 2873377, at *3 (W.D. Va. Apr. 10, 2023); Still Aff. ¶ 15, Encl. A. Plaintiff did not move beyond the first step in the administrative process by submitting a Regular Grievance about the December 15 incident. Accordingly, it remains undisputed on the summary judgment record that plaintiff failed to exhaust administrative remedies. Second, plaintiff's sworn allegations about exhaustion do not raise a dispute of material fact that administrative remedies were not available. *See Williams*, 2024 WL 1261211, at *4 n.5 (finding that a "bald assertion" in a verified complaint that prison staff "denied him of a informal complaint and grievance" is "not enough to create an issue of fact" on exhaustion) (citing *United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004)).

For these reasons, defendants are entitled to summary judgment.

## C. Injunctive Relief[3]

A plaintiff seeking a preliminary injunction must establish all four of the following elements: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In the context of the administration of a state prison, injunctive relief should be granted only in compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir.

---

[3] Defendants have responded to plaintiff's motions for injunctive relief and also filed a motion for an extension of time. ECF No. 69. This motion will be granted such that defendants' responses are deemed to be timely filed.

1994). The judiciary grants "wide ranging deference" to prison administrators on matters within their discretion. *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

Williams is not likely to succeed on the merits of his claims because, for the reasons stated in this opinion, his suit is barred based on his failure to exhaust administrative remedies. Moreover, plaintiff's contentions in his recent requests for injunctive relief are not related to the allegations in this lawsuit. The underlying complaint relates to conduct occurring in 2020, whereas plaintiff's motions complain about conduct occurring in 2025. ECF Nos. 66, 68. While a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945); *see also Brooks v. Zorn*, No. 2:22-cv-00739-DCN-MHC, 2024 WL 1571688, at *6 (D.S.C. Apr. 11, 2024) (denying motion that "seeks injunctive relief unrelated to his complaint against non-parties to this lawsuit") (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

For these reasons, the court will deny Williams' requests for injunctive relief.

### III.  CONCLUSION

The court will grant defendants' motion for summary judgment and dismiss this action in an appropriate order.

Entered: October 16, 2025

*s/ Joel C. Hoppe*
Joel C. Hoppe
United States Magistrate Judge